UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOHN HATTON                                              Movant/Defendant

v.                                    Criminal Action No. 3:12-cr-00104-RGJ-2

UNITED STATES OF AMERICA                           Respondent/Plaintiff

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on John Hatton's ("Hatton") *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255. [DE 338]. The Court allowed Hatton to file an Amended Petition. [DE 377]. The United States responded [DE 401]. The Magistrate Judge held an evidentiary hearing, after which Hatton and the United States each submitted post-hearing briefs. [DE 430; DE 435; DE 436; DE 441; DE 442]. The Magistrate Judge filed a Report and Recommendation ("R&R"). [DE 443]. Hatton timely objected. [DE 444]. The matter is ripe. Having reviewed de novo the portions of the R&R to which Hatton objected, the Court **ADOPTS** the Magistrate Judge's Findings of Fact and Conclusions of Law [DE 443] and **OVERRULES** Hatton's objections [DE 444].

### I.      FACTUAL AND PROCEDURAL HISTORY[1]

#### A.  Factual and Procedural Background

The following recitation of facts is taken from the majority opinion of the Sixth Circuit on Hatton's direct appeal:

> On Friday, October 21, 2011, at about 6:00 p.m., John Hatton attempted to rob the M & I Smoke Shop, a small convenience store in Louisville. Holding a revolver, Hatton ordered the proprietor, "Give me all your money or I'll kill you...." The shop owner wrested the revolver away from him. When Hatton tried to flee, the owner

---

[1] The following background is taken primarily from the R&R. [DE 443 at 3263-74]. Hatton does not object to the Magistrate Judge's findings of fact.

shot him in the leg. The entire incident was captured by the store's video security cameras. Hatton was held on state criminal charges.

Three months earlier, in July 2011, Louisville Metro Police Department had begun investigating a series of armed robberies. Eight armed robberies—some by a white female, some by a male at a location the woman had robbed, and some by a white female accompanied by a male—left the police with a suspicion that all the robberies were committed by a robbery ring connected to the white female. These robberies included a September 23, 2011 bank robbery by a white female and a white male a month before Hatton's arrest and a January 23, 2012 robbery of the same bank by a white female and a black male three months after Hatton's arrest.

Around January 28, 2012, a few days after the second bank robbery fitting the pattern of the white-female led ring, the police received a tip from a parent whose child went to school with the child of a white female named Jillian Wojciechowski. Specifically, the parent overheard Wojciechowski's daughter say that her mother, Wojciechowski, had been on the news for robbing a bank. The police identified the getaway car from the January 2012 bank robbery as Wojciechowski's. Thus, Wojciechowski became the primary suspect in the robbery ring, along with her live-in boyfriend, Dean Ridge. Over the next several months, the police conducted surveillance of Ridge and Wojciechowski. In March 2012, police photographed Wojciechowski in the company of two black males, Joshua Ewing and Vincent Coleman.

Police learned of Wojciechowski's and Ridge's ties to Coleman when they tracked Wojciechowski's car to an overnight stay at Coleman's wife's home. Coleman sold Wojciechowski and Ridge drugs and guns that were used in various armed robberies.

Meanwhile, with her husband in jail, Hatton's wife, Sara, took action. In mid-April 2012, she called the Louisville Metro Police offering to help build a drug trafficking case against an acquaintance of hers, Jillian Wojciechowski. Sara Hatton said she was volunteering her help to qualify her husband for a shorter sentence for the smoke shop offense. Sara Hatton gave no indication that her husband had requested or in any way procured her cooperation with the authorities.

Investigators had Sara Hatton record telephone conversations with Wojciechowski. Sara Hatton next recorded Wojciechowski selling her drugs and discussing a bank robbery.

Days after Sara Hatton's undercover meeting, investigators arrested Wojciechowski and Ridge and searched their house. Wojciechowski submitted to questioning by detectives, and she confessed her role in the bank robberies.

During that first interrogation, Wojciechowski told detectives she had an accomplice in the first bank robbery: John Hatton. Wojciechowski later accused

Sara Hatton of complicity as well. Hatton and Ridge had met each other about six months before the September 23, 2011 bank robbery. The night before the September 23 bank robbery, the Hattons went to Wojciechowski's and Ridge's home to spend the night. The four of them discussed robbing Your Community Bank, where Ridge had an account.

Sara Hatton had worked in banking and gave advice on how to avoid dye packs, bait bills, and silent alarms that would be triggered by removing money from teller drawers. Sara explained getting money from the vault could avoid those alarms. Sara, who was pregnant, was not going along with the others on the robbery, but participated in the planning by providing her advice. The next day, Ridge drove Hatton and Wojciechowski to the Your Community Bank in Hatton's Jeep Cherokee. Ridge sat in the car as Hatton and Wojciechowski went into the bank.

Multiple bank surveillance cameras captured the robbery on video. While Hatton wore a ski mask, the jurors could thus compare the male bank robber's stature and few visible features of Hatton's.

The robbers got a total of $120,721.62. Ridge drove Hatton and Wojciechowski to an empty house he was painting and split the money, one-half for Hatton, and one-half for Wojciechowski.

Wojciechowski and Ridge were both taken into custody on May 16, 2012. Wojciechowski said that the then-pregnant Sara Hatton had stayed at Wojciechowski's house during the robbery, and as soon as the crime was done and the robbers had split the money, Hatton rushed back to Wojciechowski's house, picked up his about-to-deliver wife, and sped to the hospital. Sara was admitted to the maternity ward by mid-afternoon, and delivered a baby boy shortly after midnight. Ridge made similar allegations about the Hattons. Sara Hatton was killed in an automobile accident in August 2012.

*United States v. Hatton*, 643 F. App'x 574, 575–76 (6th Cir. 2016) (internal citations omitted).

While only Wojciechowski was charged in the initial federal indictment in August 2012, Hatton and Ewing were both added in a superseding indictment in March 2013.  [DE 1; DE 22]. Hatton was charged with one count of bank robbery for the September 23, 2011, robbery of Your Community Bank; one count of robbery for the October 21, 2011, M & I Smoke Shop robbery; and two separate counts of brandishing a firearm during a crime of violence during the two

robberies.[2]  [DE 22].  In May 2013, a second superseding indictment added Ridge to the case and a charge of conspiracy to commit bank robbery against Wojciechowski, Ridge, Ewing, and Hatton.  [DE 41].  Hatton's co-defendants were also charged with other bank robberies.  [*Id.*].

At Hatton's May 10, 2013, initial appearance, the Court appointed attorney Brian K. Darling ("Darling") from the Court's Criminal Justice Act panel to represent Hatton.  [DE 50].  After his arraignment on the second superseding indictment, Hatton's trial was initially set for June 19, 2013.  [DE 58].  On June 7, 2013, Darling filed a motion to continue the trial because he had received "voluminous discovery" approximately a week prior that he had not yet reviewed as of the date Darling filed the motion.  [DE 75].  Darling also represented that he already had other trials on his calendar and pointed out that the initial trial date had been set out only one month from Hatton's arraignment.  [*Id.*].  At a hearing on the motion to continue, the United States also made an oral motion to continue the trial.  [DE 82].  The Court granted the continuance, indicating that Hatton's trial would be rescheduled at a later time.[3]  [DE 83].  Ultimately, Wojciechowski and Ridge entered guilty pleas in lieu of going to trial.  [DE 84; DE 85; DE 88; DE 103; DE 105; DE 109].  Ewing went to trial on his own in July 2013 and was found guilty of both a January 23, 2012, bank robbery and brandishing a firearm in relation to a crime of violence; the United States did not try Ewing on the conspiracy charge.  [DE 41; DE 111].  That left Hatton as the sole remaining defendant in the case.

The Court set a further proceeding for August 7, 2013, to discuss the status of the case.  [DE 114].  During the hearing, Darling told the Court:

---

[2] While the date of the Smoke Shop robbery was wrong in the superseding and second superseding indictments, before Hatton's trial, the United States corrected it in the third superseding indictment.  [*Compare* DE 22 and DE 41 *with* DE 165].

[3] The Court set a trial as to Wojciechowski and Ewing on one of the other robberies in the second superseding indictment only.  [DE 41; DE 83].

> Judge, if you remember, I was somewhat of a late arrival in this and kind of stirred the pot and got the bees all going on this back in the latter part of June there. I'm still getting through things. I don't know what date you are looking at for a trial date. I would like to put it as far down the road as possible to set the trial date in the late fall so I can get with Mr. Hatton on some of these other items. Mr. Dyke . . . furnished me with some additional discovery. We have got a stack. I'm trying to separate out what was -- what had been used in the one conspiracy trial already, which is superfluous to Mr. Hatton as to the remaining counts, and also any motions that I have to make on his behalf.

[DE 256 at 1972].  The Court set the matter for trial as to Hatton to begin on November 5, 2013. [DE 117].

The Court then set the matter for an October 25, 2013, telephonic conference to discuss the upcoming trial.  [DE 149].  The morning of the conference, Darling filed a motion to continue, [DE 150].  In it, he argued that while much of the "voluminous discovery" that was provided by May 30, 2013, had been reviewed with Hatton, "other documentation ha[d] not yet been reviewed."  [*Id.* at 629].  Darling also indicated that Hatton had been moved to a different facility, which made it difficult to visit him, and that the Parties were discussing resolution. Darling wrote, "At this point in time, the undersigned does not believe that theis [sic] Defendant's defense is ready, nor will it be ready, for trial as scheduled herein."  [*Id.*].  During the conference, when the Court inquired if the Parties were ready for trial, Darling repeated much of what he said in the motion but also stated, "I haven't had a real good chance to go over everything that was – that [the prosecutor] was kind enough to give me back in the spring, early summer," seemingly referencing discovery materials.  [DE 257 at 1976].  When told the Parties were discussing resolution, the Court indicated that it felt the trial date should stay on to pressure Hatton to make a decision on whether to take a plea. Darling said that was fine but also said, in relation to some of his discussions with Assistant United States Attorney Tom Dyke:

5

On the other hand, if it turns out that the offer and whatever Tom and I come up with is not satisfactory with him, I still got a heck of a lot more to do to go over with him. I mean, I just spent the other day two hours just copying things that still needed to be given to him. You got half a dosage, and now he's got another half dosage going there. That was my thoughts on it. I didn't want to get caught with my pants down. Maybe I made a mistake by kind of putting it on hold for a week or two or three here when Tom said he was going to get back to me. As I told Tom, I'm not trying to throw him under the bus. I probably shouldn't have relied upon that. You try to go with your gut feeling and your experience after 39 years. That's what I was doing. I'm not sure what he's going to do, but his last comment to me was to see what the offer is, and if not, we will try it. Tom and I haven't talked face-to-face about that. I agree with the Court that it might be an incentive for him to go ahead and do something. But Tom has to give us something that will make it an incentive to him obviously.

[*Id.* at 1989-90]. Darling repeated that he was not trying to delay anything but said again, "I'm just trying to make sure me and my client don't get caught with our pants down here." [*Id.* at 1981]. The Court held the motion to continue in abeyance at first but ultimately sustained it and continued the trial to November 18, 2013. [DE 153; DE 154].

Darling then proceed to make pretrial filings on behalf of Hatton including a short motion to dismiss based on the speedy trial act, a motion to sever the trial of the Smoke Shop robbery from the bank robbery, a motion in limine, and a pretrial memorandum in which he indicated that he would be presenting an alibi defense through "Mr. Hatton, a representative of the subject hospital's medical records section and [Hatton's] mother, Lisa Peyton" that Hatton was attending the birth of his child on the date of the bank robbery. [DE 177 at 1238; DE 172; DE 173; DE 181]. At the conference the Court set to discuss the pending motions [DE 176], which were denied, Darling said that Hatton had told Darling Hatton had not had sufficient time to go through a lot of the discovery. [DE 235 at 1871]. Darling made an oral motion to continue the trial again, but the Court denied the motion. [DE 186].

Hatton went to trial on November 18-20, 2013. [DE 229; DE 230; DE 231]. Both Wojciechowski and Ridge testified against Hatton. Darling's main defense for Hatton was to

6

emphasize his limp and cast doubt on whether the physical characteristics of the male robber matched Hatton by suggesting it could have been Ridge.  In his opening statement, Darling told the jury that Hatton was not present at the bank on the day of the robbery and was instead with his pregnant wife at their home and later at the hospital.  He stated that hospital records would show that Sara Hatton was admitted at 2:57 in the afternoon, but he never introduced any hospital records into evidence during trial.  In fact, Darling never questioned any witness regarding Hatton's whereabouts on the day of the bank robbery.  Darling called only one witness, Hatton's sister Kelsey Payton, and asked her questions about Hatton's physical condition to establish that Hatton wore a brace and walked with a limp.

The jury ultimately found Hatton guilty on all four counts.  [DE 192].  The Court scheduled Hatton's sentencing for February 13, 2014.  [*Id.*; DE 224].  On the day of his sentencing hearing, Hatton expressed dissatisfaction with Darling's representation of him.  Hatton stated that he hadn't gotten a chance to meet with Darling after he received the presentence investigation report, which Darling disputed. [DE 258 at 1987].  Hatton said that he didn't trust Darling, denied that he was involved in the bank robbery, felt like Darling had dropped the ball on the alibi witnesses, and that Darling had said to Hatton's mother that it was on Hatton to have the alibi witnesses present.  He also said that he asked Darling during trial if he should take the stand and that Darling discouraged him from doing so because it wasn't necessary.  [*Id.* at 1988-92].  Hatton ultimately said that he didn't want Darling to represent him, Darling moved to withdraw, and the Court granted the motion. [*Id.* at 1999-2000].

The Court appointed attorney Mike Mazzoli to represent Hatton.  [DE 228].  After giving Mazzoli time to prepare, Hatton's sentencing was held on December 16, 2014.  [DE 239; DE 259].

Hatton was sentenced to total term of 454 months imprisonment; $120,594.62 in restitution; and a three-year term of supervised release.  [DE 252; DE 255].

Hatton appealed his conviction to the Sixth Circuit where he argued that the trial court erred in denying his motion for separate trials on the Smoke Shop and bank robbery, in listing facts for the jury to consider in determining the existence of a nexus to interstate commerce, and in concluding that the court could not consider Sara Hatton's cooperation in determining whether to grant a variance at sentencing. *Hatton*, 643 F. App'x 574–75.  The Sixth Circuit affirmed Hatton's conviction. *Id.* at 582.  In doing so, the majority decision noted that Hatton could not prove prejudice from any misjoinder of charges because "[t]he testimony of both Ridge and Wojciechowski that Hatton was the male robber at the September 23, 2011 bank robbery, combined with other evidence, was overwhelming." *Id.* at 580.  Judge Bernice Donald concurred in part and dissented in part in the judgment, dissenting on "the majority's conclusion that the robbery charges were not misjoined and that any error was harmless." *Id.* at 582 (Donald, J., dissenting).  Judge Donald found that the record did "not contain substantial evidence of Hatton's guilt in relation to the Your Community Bank robbery." *Id.* at 585 (Donald, J., dissenting).  She highlighted evidence in the record that Wojciechowski and Ridge had "changed their stories as time went on" such that "a jury might not view these individuals as the most trustworthy sources of information about what occurred during the Your Community Bank robbery." *Id.* at 585–86 (Donald, J., dissenting).  Regarding testimony about Sara Hatton's purported participation in the robbery, Judge Donald found that "[t]o a jury, it might seem contradictory that Sara Hatton, who was attempting to help her husband receive a lower jail sentence for the Smoke Shop robbery, would assist the police in implicating her husband in the Your Community Bank robbery." *Id.* at 586 (Donald, J., dissenting).  She also found that Hatton's defense that the robber in the bank

security footage was Ridge not Hatton was "at least plausible" based in part on testimony that both

Hatton and Ridge "were tall and had slender builds, in line with the bank employees' descriptions"

and "conflicting testimony about whether Hatton walks with a noticeable limp." *Id.* (Donald, J.,

dissenting).  Judge Donald also emphasized:

> Moreover, other evidence at trial does not distinguish Hatton as the robber. Ridge had a bank account at the Your Community Bank location that was robbed, while Hatton did not. Both Wojciechowski and Ridge spoke of using Hatton's green Jeep Cherokee as the getaway car, but the prosecutor never demonstrated that Hatton owned a green Jeep Cherokee. The fingerprints and DNA recovered from the Your Community Bank robbery did not indicate who the perpetrator was. Finally, when Wojciechowski was first arrested, she told the police that Hatton took his share of money with him in the computer bag that the male robber had with him. However, when the police searched her and Ridge's home, they found two computer bags similar to the ones used during the robbery.

*Id.* at 586–87 (Donald, J., dissenting).  Thus, she concluded, "I do not believe that the government

has demonstrated that there was substantial evidence at trial indicating that Hatton is guilty of the

Your Community Bank robbery."  *Id.* at 587 (Donald, J., dissenting) (emphasis omitted).

Hatton did not file a petition for writ of certiorari with the United States Supreme Court

following the Sixth Circuit's decision.

In November 2017, Hatton filed a *pro se* § 2255 motion.  [DE 338].  That motion alleged

various constitutional violations during Hatton's trial but lacked details or any supporting

documentation about the alleged violations.  [*Id.* at 2443–57].  The Court allowed Hatton to amend

his 2255 motion.  [DE 376; DE 377].  In his amended § 2255 motion, Hatton alleged essentially

the same grounds for relief as his initial motion with more specific factual bases.  Hatton alleged

ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and a due process

violation.  [DE 377].  Based on this motion, Magistrate Judge Lindsay held an evidentiary hearing.

[DE 430; DE 435; DE 436].

### B.  Findings of Fact from Evidentiary Hearing

The Magistrate Judge made the following findings of fact, to which Hatton does not object.

Three witnesses testified at the Court's evidentiary hearing: Hatton's mother, Lisa Payton ("L. Payton"); Hatton's sister, Kelsey Payton ("K. Payton"); and Hatton's trial counsel, Darling. [DE 438, Official Transcript of Evidentiary Hearing].  The Magistrate Judge summarized the testimony of each witness as below.

#### a.  *L. Payton's Testimony*

L. Payton testified that she was Hatton's mother and that she had spoken with Darling on a regular basis about her son's case and the strategy for his defense.  [*Id.* at 3170, 3172].  As part of those discussions, she told Darling about Hatton's noticeable limp/drop foot.  [*Id.* at 3172-73, 3182-83].  She told him that Hatton had been stabbed in the back of the leg in Florida and admitted to the hospital.  [*Id.* at 3172-73].  She told him that Hatton had tendon damage and nerve damage and didn't walk right because he couldn't afford necessary surgery to fix the damage.  [*Id.* at 3172-73, 3177].  She put Darling in touch with her daughter for more information about Hatton's limp. [*Id.* at 3183].  She testified that Darling asked her for the name of the Florida hospital, told her he was going to subpoena the records, and told her that he would put her on the stand to testify regarding the limp.  [*Id.* at 3177-78].  However, despite her being separated from the other witnesses and kept out of the courtroom during trial, Darling never called her to testify.  [*Id.* at 3178-79].

L. Payton testified that Sara Hatton was pregnant at the time of the bank robbery and had her and Hatton's child on September 24.  [*Id.* at 3175-76].  However, she did not go to the hospital to see them on either September 23 or September 24.  [*Id.* at 3182].

L. Payton testified that she told Darling she knew Sarah Hatton had been planning to "try and get [Hatton] off by turning some people – or wiring up on some people, as she called it." [*Id.* at 3174].

L. Payton also testified regarding Hatton's living conditions and financial situation around the time of the bank robbery. [*Id.*]. She testified that right before the bank robbery, "they were on the streets," meaning Hatton, Sara Hatton, and their family. [*Id.*]. She said that Hatton and his family were going to move into a house in exchange for Hatton doing some carpentry and painting work so the family could stay there for free. [*Id.* at 3174-75]. She testified that at one point in July and early August 2011, Hatton and his family were living with her after they had been kicked out of their apartment. [*Id.* at 3176, 3181]. She testified that she alerted Darling to Hatton's financial difficulties but, "[h]e never made any kind of remark about it at all." [*Id.* at 3177]. In response to cross-examination by the United States, she also testified:

> Q:   And you've testified here today that you knew that they didn't have a lot of
>      money at that point.
> A:   Right.
> Q:   Okay. And you knew that they were, I think you testified, desperate for
>      money, something along those lines.
> A:   They were desperate enough that he had to rob a bank at one point – or a
>      smoke shop at one point and – meaning desperate, I guess, yeah, for their
>      children.
> Q:   So your testimony then is that he was – your son needed money so much
>      that he was willing to rob someone?
> A:   Yes.

[*Id.* at 3181-82].

Finally, L. Payton testified that when she spoke with Darling the week before trial, on November 13, 2011, Darling said he wasn't ready, "[h]e had not gotten anything done yet," and he was going to ask for another continuance. [*Id.* at 3178]. She testified that she did not think Darling was prepared for trial, saying:

He said that he was gonna ask for more time. I mean, he never really made it like it was a problem. Afterwards, he just played it off like everything was great and John would be fine. He even said it – you know, it was – it was like he had it all mapped out in his head after the weekend, you know, but before that, it was – he was not prepared whatsoever.

[*Id.* at 3179].

### b. *K. Payton's Testimony*

K. Payton, Hatton's sister, recalled testifying at Hatton's trial and that she had discussed her testimony with Darling before she was called. [*Id.* at 3185-86]. However, she indicated that she thought she was also going to be asked questions about Hatton's living situation at the time of the bank robbery and how "they were living in a really not so well house in a very bad part of town." [*Id.* at 3186]. She testified, "I believe that, you know, if someone were to rob a bank for however – you know, $60,000, I believe that they would at least have a vehicle. You know what I'm saying?" [*Id.*]. She was surprised Darling did not ask her questions regarding this when she testified at trial because they had talked about that. [*Id.* at 3188-89, 3191-92]. She testified that the day after the bank robbery, she took food to the hospital to get Sara Hatton food that was not cafeteria food because the Hattons didn't have money to buy food. [*Id.* at 3189]. She testified that around the time of the bank robbery, she was taking Hatton's oldest son back and forth to school because they did not have a vehicle. [*Id.*].

K. Payton also testified that she knew Hatton and his wife were at the hospital "during the bank robbery" because Sara was giving birth. [*Id.* at 3186-87]. However, she did not go to the hospital on the day of the bank robbery; she visited the next day, September 25. [*Id.* at 3187, 3190-91]. She was not at the hospital before her nephew was born. [*Id.* at 3190]. She testified that Darling was certainly aware that the birth of Hatton's son occurred close in time to the bank robbery and that he had told her he was going to raise this as a defense for Hatton. [*Id.* at 3188].

12

K. Payton also testified that she talked to Darling about Hatton's drop foot.  [*Id.* at 3192-93].

### c.  *Darling's Testimony*

Darling testified that he had practiced criminal law since 1974 and that he had been taking cases from the Court's Criminal Justice Act Panel since 1974 and only stopped a few years ago. [*Id.* at 3200].  He regularly spends time in federal and state courts.  [*Id.* at 3200-01].

He testified that, as part of his representation of Hatton, he met with Hatton and members of Hatton's family, including over thirteen phone calls with L. Payton.  [*Id.* at 3201-02].  He recalled making pretrial motions, including a motion to sever and a motion related to delay.  [*Id.* at 3203-05].  He met with Hatton at least three times face to face and spoke with Hatton on the phone.  [*Id.* at 3216-17].

He testified that he received and reviewed discovery from the United States as well as Jencks material on Hatton's codefendants that he had requested.  [*Id.* at 3206, 3213].  He said that in his view, there was "a lot of discovery," and it included state court materials as well as typical federal court discovery.  [*Id.* at 3226].  He testified that he sent the discovery to Hatton as "best [he] could" due to issues at the time with how much time Hatton could spend on the computer. [*Id.* at 3206].  He recalled having a conversation with Hatton a few days before trial about this where Hatton told him Hatton had not had a chance to look at the discovery and asked him to ask for a continuance so he did but it was overruled.  [*Id.* at 3206-07].  He testified that he was able to prepare for trial and that he "had done loads of work" to prepare.  [*Id.* at 3207].  He testified that Hatton's hesitance notwithstanding, he "had everything [he] needed" to go forward and that he believed he did effectively prepare for trial.  [*Id.* at 3225].

He testified that he thought Hatton's limp was a particularly important defense because it "put a big question mark in – or should have in the minds of the jury as to whether [Hatton] was there or not." [*Id.* at 3208]. He testified that he called K. Payton to testify regarding this because he thought she made a good witness based on his conversations and interview of her. [*Id.* at 3209]. Regarding not having L. Payton testify, he stated, "I didn't think the same of his mother, but she really wasn't going to add anything more than what the sister already had to say." [*Id.*].

He also testified that he investigated the "timeline" of the bank robbery in preparing the case for trial but that in his view, the birth of Hatton's child didn't exonerate Hatton because there was a gap of time. [*Id.* at 3210]. He said,

> If I remember, the bank robbery was in the morning, tenish or something like that. His baby was born later than afternoon, if I remember or the next day, but there was a gap of time there. And, you know, we couldn't put that on. It would still show opportunity, which is one of the things you do not want, to give the prosecution a chance to prove that a defendant had opportunity to do what he was charged with.

[*Id.* at 3210, 3219]. He testified that he did look into medical records from the hospital in making this determination. [*Id.* at 3212].

He also testified that he had talked about Hatton's financial status several times with Hatton's family and that he knew Hatton was "having a hard time of it." [*Id.* at 3210, 3210-11]. He noted that Hatton had raised that as a potential defense to his alleged robbery gains and wanted Darling to get Hatton's bank records to show Hatton's financial status. [*Id.* at 3211]. But Darling testified

> Well, people who are bank robbers don't put that money in the bank. Okay? They don't create a trail, and he was trying to say that there is no trail. So, therefore, there's no money in my hands. I wasn't part of that. I didn't think that would fly. I thought that would come back to haunt him. . . . [I]t wouldn't prove anything. It would not be helpful to his situation.

14

[*Id.* at 3211]. He also expressed concern that to get that information in, Hatton would have had to testify, which would have "open[ed] the door to everything about him." [*Id.* at 3212]. He didn't believe Hatton's financial status had "probative value." [*Id.* at 3220].

Darling affirmed that he believed his preparation for Hatton's trial was on par with how he has prepared for other trials in his career and that he believed Hatton received effective assistance of counsel. [*Id.* at 3215].

## II.    STANDARD

### A.    Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72, a district court may refer a prisoner petition to a magistrate judge to conduct an evidentiary hearing, if necessary, and submit proposed findings of fact and recommendations for the disposition of the petition. Rule 72(b)(2) provides a petitioner with fourteen days after service to register any objections to the recommended disposition. This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (citation omitted). A general objection that fails to identify specific factual or legal issues from the R&R is not permitted as it duplicates the magistrate judge's efforts and wastes judicial resources. *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). After reviewing the evidence, the Court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

Hatton's objections to the R&R are largely reiterations of arguments made in his Amended Habeas Petition and post-evidentiary hearing briefing. [*Compare* DE 377 and DE 441 *with* DE

444]. An "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017) (citing *Howard*, 932 F.2d at 509 ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless."). As a result, Hatton's general objections and repetition of the arguments made in his initial Petition cannot qualify as objections. Thus, the Court need not review de novo the Magistrate Judge's report on these Objections. *Ells v. Colvin*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *2 (W.D. Ky. Mar. 27, 2018).

Even though the Court need not conduct a full de novo review, the Court has considered the merits of Hatton's Objections and accepts the Magistrate Judge's proposed findings and recommendations as well reasoned.

### B.  Standard for pro se petitioner

"The pleadings of pro se petitioners are held to less stringent standards than those prepared by attorneys, and are liberally construed when determining whether they fail to state a claim upon which relief can be granted." *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). At the same time, "the less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008); see also *Howard*, 932 F.2d at 508. Accordingly, the following analysis addresses only those objections that can be fairly inferred through "active interpretation" of the Petition and briefing. *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

### C.  Standard for Relief from Sentence under Federal Habeas Statute

Under 28 U.S.C. § 2255, a prisoner in custody may move to vacate, set aside, or correct a sentence on grounds that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a).  When the prisoner alleges constitutional error, the error must be one of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings to warrant relief.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).  Non-constitutional errors, on the other hand, are generally outside the scope of § 2255 relief and only merit relief if the prisoner establishes a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348 (1994); *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000).

## III.    DISCUSSION

Although Hatton filed his Petition and Amended Petition pro se, counsel represented him at his evidentiary hearing and in his objections to the R&R.  [DE 377; DE 438; DE 444].  Hatton's Motion to Vacate can be broadly organized into three categories: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and denial of due process.  [DE 377 at 2701].  The R&R concludes that Hatton's Petition should be denied on each claim and denies a certificate of appealability.  [DE 433].  Hatton objects only to the Magistrate Judge's findings on ineffective assistance of trial counsel and certificate of appealability.  [DE 444].

The Court need not review and may adopt the findings and rulings of the magistrate judge to which no specific objection is filed.  *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985).  Nonetheless,

the Court has reviewed the R&R on Hatton's other claims and finds it be well reasoned. Therefore, the Court adopts the R&R on all bases not objected to.

### A. Ineffective Assistance of Counsel

Hatton argued in his Amended Petition that his trial counsel was ineffective on several grounds. [DE 377-1 at 2702]. Based on the briefing and evidentiary hearing, the R&R extrapolated and analyzed five grounds for ineffective assistance of trial counsel: (1) counsel's failure to generally investigate and also to specifically investigate Hatton's financial records and alibi; (2) counsel's failure to subpoena and call witnesses at trial; (3) counsel's lack of preparation at trial; (4) counsel's failure to object to § 924(c) jury instructions on grounds of "duplicity"; and (5) counsel's assistance at sentencing. [DE 443 at 3281-82]. The R&R notes that at the evidentiary hearing Hatton withdrew one other ground—counsel's purported efforts to prevent Hatton from testifying—and thus does not analyze this ground. [*Id.*].

The R&R concludes that Hatton's ineffective assistance of trial counsel claim should be denied on each ground Hatton asserts. [*Id.* at 3281-3292]. Hatton objects to the Magistrate's finding on three of these grounds: failure to investigate, failure to call witnesses at trial, and preparation for trial. [*Id.* at 3296-02]. Having reviewed the R&R and having found it well reasoned, the Court adopts the findings on the remainder of the grounds for ineffective assistance of trial counsel. *Thomas*, 474 U.S. at 149–50.

Again, the Court notes that Hatton's objections to the R&R are largely reiterations of arguments made in his post-evidentiary hearing briefing and are thus improper. [*Compare* DE 441 *with* DE 444]; *Altyg*, 2017 WL 4296604, at *1. Still, in an abundance of caution, the Court will consider each of Hatton's objections.

18

*a. Ineffective Assistance of Counsel standard*

To establish ineffective assistance of counsel, a defendant must show that: (1) "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The prejudice inquiry requires the defendant "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695.

"[C]ompetent counsel can be expected to undertake a 'thorough investigation of law and facts relevant to plausible options' for the defense." *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690). This "does not require counsel to investigate every conceivable defense" but any limitation on his investigation "must be supported by a 'reasonable

19

professional judgment [.]'" *Id.* (quoting *Strickland*, 466 U.S. at 691).  "To present an ineffective assistance of counsel claim based upon a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result."  *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) (citing *U.S. ex rel. Jones v. Chrans*, 187 F. Supp. 2d 993, 1009 (N.D. Ill.), *aff'd sub nom. Jones v. Briley*, 49 F. App'x 623 (7th Cir. 2002)).

The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one.  *Strickland*, 466 U.S. at 697.  For example, if the Court determines the defendant fails to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient.  *Id.*

When a habeas petitioner claims that his counsel has been ineffective, the assessment of trial counsel's judgment requires another layer of deference: the Court is "required not simply to give [the] attorney[ ] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did."  *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and citation omitted).  Thus, the nexus of the AEDPA and *Strickland* compels the Court to be "doubly deferential," and "give[ ] both the state court and the defense attorney the benefit of the doubt."  *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Strickland* at 190) (internal quotation marks omitted).

   b.  *Objection One: Failure to Investigate and Failure to Call Witnesses at Trial*

Hatton objects to the Magistrate Judge's conclusion to grounds one and two that his Amended Petition be denied on grounds of trial counsel's investigation and trial strategy.  [DE 443 at 3282-87].  The R&R concludes that Hatton failed to show deficient performance or prejudice on these issues.  [*Id.*].  Hatton includes a paragraph of his objections:

> Hatton objects to the finding that "Hatton has failed to show either deficient performance or prejudice" with respect to trial counsel's failure to investigate potential defenses, including Hatton's financial status at the time of the robbery and his alibi defense.  Hatton objects to the conclusion that counsel's decision not to introduce evidence was strategic, and therefore constituted reasonable performance.  Hatton also objects to the conclusion that "the facts Hatton wanted Darling to elicit were less than exculpatory."  Hatton objects to the finding that he "failed to demonstrate either deficient performance or prejudice" with respect "to his financial defense."  Hatton objects to the illogical conclusion that evidence Hatton was destitute after the bank robbery "would have been viewed as proof of Hatton's motive for bank robbery."  And Hatton objects to the recommendation that his § 2255 motion be denied with respect to Grounds One and Two.

[DE 444 at 3296-99 (internal citations omitted)].   In short, Hatton argues that Darling was ineffective because Darling failed to investigate and present witness or evidence on Hatton's alibi and that Hatton was broke shortly after the bank robbery.  [*Id.*].

Hatton first specifically argues that Darling "had not investigated records and evidence showing Hatton . . . was likely at the hospital or preparing for his child's birth at the time of the robbery."  [*Id.*].  Hatton contends that the result of the trial would have been different because his alibi of being at the hospital shortly after the bank robbery "would have established that it was nearly impossible for Hatton to have participated in the robbery."  [*Id.* at 3298].  Darling testified that he investigated Hatton's alibi and did not view it as exonerating because of the time gap between the robbery—which occurred at 10:54 am—and Hatton's arrival at the hospital—allegedly around 2:57pm.  [DE 443 at 3284-85].  Darling looked at medical records and noted the time of Hatton's son's birth—after midnight.  [*Id.*].  Even Hatton agrees that he "and his wife were not in the hospital precisely at the time of the robbery, so the evidence did not provide a complete alibi or show that it was impossible for Hatton to have committed the bank robbery."  [DE 441 at 3244; DE 444 at 3298].  As Darling testified, presenting this evidence "would still show opportunity, which is one of the things you do not want, to give the prosecution a chance to prove

that a defendant had opportunity."[4]   [DE 438 at 3210; DE 443 at 3278].   Under an objective professional standard, and showing appropriate deference to Darling's conduct, his investigation into Hatton's alibi was reasonable.

Hatton also broadly cites to Darling's testimony and asserts that his "testimony concerning a potential alibi is contradicted" by Darling's reference to an alibi in his opening statement at trial. [DE 444 at 3298-99].   Without citation, the Court is unaware what specific testimony by Darling is purportedly contradicted.   In any case, the decision not to include the alibi evidence is a strategic decision left to counsel about what witnesses to call and what defenses to present.   *Strickland*, 466 U.S. at 690–91 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").   And given the four-hour gap of time between the bank robbery and when Hatton's wife was admitted to the hospital, it would not have been "nearly impossible for Hatton to [both] have participated in the robbery" and be present at the hospital.   [DE 443 at 3284-85].   In his second objection, Hatton suggests that Darling should have called K. Payton and L. Payton as alibi witnesses.   [DE 444 at 3299-3300].   But neither were present at the hospital with him, so neither had personal knowledge of his whereabouts that day.   [DE 443 at 3285].   It was thus reasonable for Darling not to present evidence on Hatton's incomplete alibi.

---

[4] The Court notes that Hatton's brief, without citation, quotes Darling: "counsel concluded that 'presenting evidence of the timeline would have only proven that Hatton had opportunity to rob the bank, not the opposite.'"   [DE 444 at 3298].   While the Court has no duty to search the record, it could not locate the quotation from Hatton's brief in the evidentiary hearing transcript.   *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) (discussing on appeal from summary judgment, "[i]t is not the district court's (or our) duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments." (citations omitted)).   The Court assumes Hatton intended to cite Darling's quote from the hearing transcript as cited in the above paragraph.   Thus, while Hatton's brief does not mischaracterize Darling's testimony, it does misquote him.

Additionally, to the extent that Hatton argues that Counsel was ineffective for failing to investigate in order to find a nurse or other person to present evidence of his whereabouts after the bank robbery, Hatton "cannot simply state that [such] testimony would have been favorable." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). When a defendant claims that his attorney failed to call a witness at trial, he must "[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense." *United States v. Collier*, No. 6:05-CR-58-DCR, 2011 WL 1882401, at *6 (E.D. Ky. Jan. 11, 2011), *report and recommendation adopted,* No. CIV.A. 6:08-7023-DCR, 2011 WL 1882395 (E.D. Ky. May 17, 2011) (citing *Talley v. United States*, No. 1:00-CV-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006). Without such affidavits or testimony, "the Court cannot make any real assessment of how any testimony from the purported alibi witnesses would have affected the outcome of his trial." *Id.* Thus this also fails to establish ineffective assistance of counsel.

Furthermore, Hatton has not shown that the outcome of the trial would have been different but for the lack of the incomplete alibi evidence, and thus this argument fails on that basis alone. *See Strickland*, 466 U.S. at 697 (the court need not address both parts of the test if the defendant makes an insufficient showing on one); s*ee also Crowe v. United States*, No. CR 11-20481, 2019 WL 1619969 (E.D. Mich. Apr. 16, 2019) (finding no deficient performance where trial counsel made strategic decision not to call potential alibi witnesses "whose testimony would have run counter to the weight of the evidence").

Hatton also argues that evidence of his financial situation "would refute the allegation that he participated in the bank robbery." [DE 444 at 3297-98]. Darling testified that he had talked to Hatton about this financial status and thus knew Hatton was "having a hard time of it." [DE 438

23

at 3210].   Darling added that he was concerned about raising this strategy because Hatton would have to testify to do so, and that Darling's opinion was that Hatton testifying would open the door to too many issues.  [*Id.* at 3210-11; DE 443 at 3286-87].  The Court agrees with the R&R that evidence showing Hatton was broke tends to establish motive rather than innocence, and Darling's decision not to investigate Hatton's financial situation or present evidence of it at trial was reasonable.  Furthermore, L. Payton testified both at trial and at the evidentiary hearing that Hatton was so desperate for money that he was willing to rob someone.  [DE 438 at 3181-82; DE 443 at 3287].  Hatton does not show a reasonable probability that but for the failure to present further evidence of his financial situation the result would have been different or that it prejudiced him. *See Strickland*, 466 U.S. at 694.

Therefore, as Darling's trial decisions were reasonable, and alternatively because the failure to present Hatton's desired evidence was not prejudicial, the Court finds Darling's conduct does not rise to *Strickland's* level of prejudice and ineffective assistance of counsel.   The Magistrate Judge did not err in his application of *Strickland* and there was no error of a constitutional magnitude that had a substantial and injurious effect or influence on the proceedings to warrant relief.   Hatton's objection is overruled.

c.   *Objection Two: Trial Preparation*

The Court next addresses Hatton's argument that counsel was not prepared for trial.  Hatton argues that Darling requested and was denied a continuance, later failed to present evidence at trial that he had stated he would, and that Darling failed to point out contradictions in key witness testimony.  [DE 444 at 3299-3302].

In support, Hatton cites L. Payton's testimony stating that Darling told her "he was not ready" and that L. Payton herself did not think Darling was ready for trial.  When asked why she thought that she responded:

A.    I don't know if it was the fact that he didn't have enough time. I don't know if it was just him. I don't know.
Q.    Did he ever tell you that he -- that he wanted more time?
A.    Yeah. I mean, he told me that --
Q.    When did he tell you that?
A.    He said that he was gonna ask for more time. I mean, he never really made it like it was a problem. Afterwards, he just played it off like everything was great and John would be fine. He even said it -- you know, it was -- it was like he had it all mapped out in his head after the weekend, you know, but before that, it was -- he was not prepared whatsoever.

[DE 438 at 3178-79].  This testimony alone cannot support that Darling's preparation was lacking. Even assuming Darling said he was not and was in fact not ready, and that L. Payton herself did not think he was ready, the testimony does not support how Darling's lack of preparation would have affected the trial and its outcome.

Hatton further argues that "testimony was offered demonstrating that trial counsel's strategy was to highlight the inconsistencies in the cooperating witnesses' stories and to show that it would have been impossible for Mr. Hatton to have committed the bank robbery."  [DE 444 at 3299-3300].  Having already addressed ineffective assistance with respect to Hatton's alibi and financial situation above, the Court considers Hatton's final contention "that cooperating prosecution witnesses were lying about his involvement in the bank Robbery because Mr. Hatton's wife had cooperated in the investigation of Wojciechowski."  [*Id.*].  He contends that pointing out the contradictions "would have been critical because there were no eyewitnesses that could identify Hatton as being one of the robbers and the only evidence supporting a conviction came from Wojciechowski and Ridge."  [*Id.* at 3300-01].  The first problem with this argument is that Hatton does not establish prejudice by demonstrating how additional preparation would have changed

Darling's treatment of this testimony.  Secondly, this argument is in essence challenging the sufficiency of the evidence.  "Section 2255 cannot be used to attack the sufficiency of the evidence by which a defendant is convicted, as that is an issue that can be raised only by direct appeal." *Mitchell v. United States*, No. 2:04-CR-02, 2007 WL 325762, at *3 (E.D. Tenn. Jan. 31, 2007) (citing *Stephan v. United States*, 496 F.2d 527, 528–29 (6th Cir. 1974)); *see also United States v. Shields*, 291 F.2d 798, 799 (6th Cir. 1961) ("A Section 2255 proceeding cannot be used as a substitute for an appeal.").  Accordingly "[t]he sufficiency of the evidence to prove the alleged offenses will not be reviewed in [this 28 U.S.C. § 2255] proceeding" and the Court does not analyze this argument further.  *Shields*, 291 F.2d at 799 (citing *Dunn v. United States*, 250 F.2d 548 (6th Cir. 1957)).

Hatton also argues as evidence that Darling was unprepared that the day before trial Darling requested a continuance that was denied.  [DE 444 at 3299].  Hatton cites Darling's testimony on direct, but Hatton pointed the Court to no specific quotation, and the Court found no supporting testimony from Darling suggesting that he was unprepared for trial.  [*Id.* at 3211-12].  To the contrary, Darling testified that he felt prepared to go to trial when they went to trial.  [*Id.* at 3217].  He explained that he requested the continuance not because he was unprepared for trial, but because Hatton "was for [it]," since Hatton "just didn't have time to go over all of" the discovery "and that's when [Hatton] said, 'so go ahead and see if we can get a continuance.'"  [*Id.* at 3217, 3220-21].  This testimony tracks what Darling told the Court at the time.  [DE 235 at 1870-71].  Other than the grounds already considered by the Court above, Hatton does not specify how Darling should have been more prepared.  [DE 444].  With no specific objection and after reviewing it de novo, the Court agrees with the R&R's analysis of Darling's preparation for trial, and that Darling's amount of preparation was reasonable and not deficient under *Strickland*.  [DE

443 at 3290]. The Court also agrees with the R&R that Hatton did not establish prejudice, as he "failed to establish what additional time or unspecified preparation would have done to change the outcome of his trial." [*Id.*]. Having failed to show deficient performance or prejudice, Hatton has thus not supported his claim that Darling was unprepared for trial.

A defendant is "entitled to a competent defense, but not a perfect one." *Thomas v. United States*, 849 F.3d 669, 678 (6th Cir. 2017) (citing *Crehore v. United States*, 127 F. App'x 792, 796 (6th Cir. 2005)). Based on the Court's findings on both of his objections, Hatton received a competent defense supported by reasonable performance and a lack of prejudice. There was thus no error of a constitutional magnitude that had a substantial and injurious effect or influence on the proceedings to warrant relief. Having found the Magistrate Judge did not err in his findings, the Court will therefore **DENY** Hatton's Motion to Vacate under 28 U.S.C. § 2255 [DE 338; DE 377].

## B.  Certificate of Appealability

Hatton also objects to the R&R's denial of a certificate of appealability. [DE 444 at 3302]. He argues only that "the reasons presented in his § 2255 supplement, reply, and post-hearing brief" show that his right to effective assistance of counsel was violated and that reasonable jurists could disagree. [*Id.*].

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue only if the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at

484.  When "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Hatton has advanced no arguments showing the Court's assessment of his § 2255 motion was debatable or wrong.  Nor could a reasonable jurist find that the Court's analysis was debatable or wrong.  Thus, petitioner did not meet the threshold substantial showing of the denial of a constitutional right required under § 2253(c)(2) and a COA will not issue.

## IV.   CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS**:

(1)    Hatton's objections to the R&R [DE 444] are **OVERRULED**;

(2)    The Report and Recommendation, [DE 443], is **ADOPTED**

(3)    The Motion to Vacate Under 28 U.S.C. § 2255 [DE 338]/[DE 377] is

        **DISMISSED WITH PREJUDICE**;

(4)    A certificate of appealability is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

June 9, 2023

Cc:    Counsel of record

28